UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THAL FLAM WENDROW, *et al*,

    Plaintiffs,

v.

MICHIGAN DEPARTMENT OF
HUMAN SERVICES, *et al.*,

    Defendants.
_____/

Case No. 08-14324

Hon. John Corbett O'Meara

**OPINION AND ORDER REGARDING
MOTIONS FOR RECONSIDERATION**

Before the court are four motions for reconsideration filed by Plaintiffs, the Walled Lake School District Defendants, Oakland County Defendants, and Michigan Department of Human Services Defendants.  All parties seek reconsideration of the court's March 30, 2011 opinion and order granting in part and denying in part Defendants' motions for summary judgment.  With leave of the court, these motions have been fully briefed.  Pursuant to L.R. 7.1, the court did not hear oral argument.

**I.**    **Standard of Review**

The standard for granting a motion for reconsideration is as follows:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration which merely present the same issues ruled upon by the court, either expressly or by reasonable implication.  The movant shall not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will

result in a different disposition of the case.

LR 7.1(h)(3). A motion for reconsideration "is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not." <u>Smith v. Mount Pleasant Schools</u>, 298 F. Supp.2d 636, 637 (E.D. Mich. 2003) (citing <u>Sault Ste. Marie Tribe of Chippewa Indians v. Engler</u>, 146 F.3d 357, 374 (6th Cir. 1998). <u>See also</u> <u>Scottsdale Ins. Co. v. Flowers</u>, 513 F.3d 546, 553 (6th Cir. 2008) ("We have found issues to be waived when they are raised for the first time in motions for reconsideration.").

## II.     Oakland County Defendants

The Oakland County Defendants seek reconsideration on two grounds: (1) that the court should have dismissed Plaintiffs' ADA and PWDCRA claims as a matter of law; and (2) the court should determine that statements made by David Gorcyca were not defamatory as a matter of law and dismiss Plaintiffs' defamation claim.

### A.     Defamation Claim

Plaintiffs' defamation claim against Gorcyca is based on statements he made in a July 2009 <u>National Law Journal</u> article. These statements include Gorcyca "saying that [AW] had disclosed to six different people that she was being abused at home" and that "[w]hen all the facts come to light through the course of the civil litigation . . . [t]he decision [to prosecute] will not only be justified, but will be legitimized." Gorcyca also said, "The girl was petrified to go into court and testify . . . . Without her testimony, we could not prove our case." Oakland Defs.' Ex. B (Docket No. 291).

Defendants contend that these statements and others in the article are true or statements of opinion and, therefore, not defamatory as a matter of law. The court is not inclined to address

Defendants' new arguments in this regard. Moreover, the court finds that the statements are "reasonably capable of defamatory meaning," and therefore summary judgment is not appropriate. See Falls v. Sporting News Pub. Co., 834 F.2d 611, 615 (6th Cir. 1987) ("A defamation claim may be disposed of by summary judgment if the statement in issue is not reasonably capable of a defamatory meaning.").

      B.      **ADA and PWDCRA Claims**

Each of the Plaintiffs has asserted a claim under Title II of the ADA and the PWDCRA against Oakland County. Defendants contend that Julian Wendrow, Thal Wendrow, and IW lack standing to sue under Title II of the ADA because they are not disabled and were not denied services by the county as a result of their association with a disabled individual (AW). Again, the court is generally not inclined to address arguments raised for the first time on a motion for reconsideration. The issue of standing, however, may not be waived by the parties and implicates the court's jurisdiction, such that the court has an obligation to address it *sua sponte*. "Standing is not an affirmative defense that must be raised at risk of forfeiture. Instead, it is a qualifying hurdle that plaintiffs must satisfy even if raised *sua sponte* by the court. We find no authority for the plaintiffs' argument that prudential standing requirements may be waived by the parties." Community First Bank v. The Nat'l Credit Union Admin., 41 F.3d 1050, 1053 (6th Cir. 1995).

Title II of the ADA states that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiffs contend that they have standing to sue under Title II of the ADA

because plaintiffs who are not themselves disabled nevertheless enjoy "a right of action because of their association or dealings with disabled persons." MX Group, Inc. v. City of Covington, 293 F.3d 326, 334 (6th Cir. 2002). This type of standing does not apply in this case, however.

In MX Group, the plaintiff was a drug treatment provider who was denied a zoning permit because of its association with its clients, who were drug addicts. The court found that the plaintiff had standing under the ADA to assert a discrimination claim because it suffered an injury – denial of the permit – as a result of its association with persons who are disabled. Id. at 335. In this case, Julian Wendrow, Thal Wendrow, and IW were not discriminated against or denied access to a public service because of their own disabilities or because of their association with AW. Rather, it is only AW who was arguably denied access to a public service when Oakland County allegedly failed to accommodate her disability in its communications with her.

Although the other Wendrow family members may have suffered an injury as a result of Oakland County's alleged failure to accommodate AW, they have not suffered an "ADA injury" conferring standing to sue under that statute. See Popovich v. Cuyahoga Cty. Ct. of Common Pleas, 2005 WL 2374236 (6th Cir. Sept. 27, 2005). In Popovich, the plaintiff claimed that she was injured by delays in custody litigation because the domestic relations court failed to accommodate her father's hearing disability. These delays deprived the plaintiff of her father's companionship for five years. The court dismissed the plaintiff's Title II ADA claim for lack of standing. The Sixth Circuit reasoned that MX Group did not apply, because the plaintiff herself was not "denied access to or participation in any of the public services covered by Title II." Id. at *3. "In other words, Lauren Popovich – although allegedly deprived of her father's companionship because of delays in her custody case – has not suffered an 'ADA injury.' It was

for this reason that the district court held that the plaintiff had failed to establish standing under Title II, given the fact that her association with her father did not result in her exclusion from the custody proceedings." Id.

Popovich controls here. Julian Wendrow, Thal Wendrow, and IW were not denied access or participation in any services or activities offered by Oakland County as a result of their association with AW. Therefore, they lack standing to assert an ADA claim.

The only Plaintiffs asserting a PWDCRA claim are IW and AW. In relevant part, the PWDCRA provides:

> Except where permitted by law, a person shall not:
> (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids.

M.C.L. 37.1302(a). See also Bachman v. Swan Harbour Ass'n, 252 Mich. App. 400, 426 (2002) (elements of refusal to accommodate claim). Although Plaintiffs argue that Oakland County failed to accommodate AW's disability, they do not make the same argument with respect to IW. The court finds that IW cannot state a PWDCRA claim.

### III.  Department of Human Services Defendants

The DHS Defendants seek reconsideration on several grounds. The DHS Defendants argue that the court did not address Plaintiffs' official capacity claims in Counts 19, 20, 24, and 28 against Defendants Ahmed and Robydek. The court intended to dismiss those claims in its order (see Order at 20-21) and, to the extent clarification is needed, considers them dismissed for the reasons set forth therein.

The DHS Defendants also contend that the court failed to address Count 36; however, as the court noted in its order, Plaintiffs did not dispute the defendants' motion on that count. Accordingly, the court granted summary judgment on Count 36 in favor of the DHS Defendants. See Order at 21 n.6.

The DHS Defendants contend that the court did not address whether Plaintiffs' substantive due process claim should be barred by qualified immunity. Plaintiffs' claim in this regard is based upon Robydek's production of IW for an interrogation and of AW for a gynecological examination, allegedly without authorization or parental consent. The court did not address qualified immunity in this context because Defendants did not raise the issue as to this specific conduct in their summary judgment motion. Accordingly, Defendants did not sustain their burden of demonstrating that summary judgment was appropriate. The court will not address Defendants' new arguments in this regard on a motion for reconsideration. Of course, Defendants may raise their qualified immunity argument at trial.

The DHS Defendants also argue that the court should have dismissed Plaintiffs' claims against DHS based upon the Michigan Constitution. The court noted that the parties did not adequately brief whether it is appropriate to infer a damages remedy under the Michigan Constitution and, therefore, DHS did not meet its burden of demonstrating that summary judgment in its favor was appropriate. Defendants' argument in their original brief was skeletal, essentially leaving it to the court to fashion an analysis. A party does not sustain his burden on summary judgment by asserting the legal standard and baldly proclaiming that the plaintiff's claim fails. See, e.g., United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

The DHS Defendants contend that the court should have dismissed Plaintiffs' ADA and PWDCRA claims.  As stated in the court's order, however, Defendants did not provide the court with a basis to do so.  Nonetheless, the court will dismiss Thal Wendrow, Julian Wendrow, and IW's ADA claim and IW's PWDCRA claim against the DHS Defendants based upon a lack of standing, consistent with the analysis above.  The court otherwise declines to consider new arguments raised here regarding AW's ADA and PWDCRA claims.

## IV.     Walled Lake School District Defendants

Consistent with its treatment of these claims against the other Defendants, the court will also dismiss Thal Wendrow, Julian Wendrow, and IW's ADA claim and IW's PWDCRA claim against the Walled Lake School District Defendants, based upon a lack of standing.  In their original motion, the Walled Lake School District Defendants did not address the merits of AW's ADA claim and provided only skeletal argument regarding her PWDCRA claim.  Accordingly, the court will not consider new argument on these issues now.

The Walled Lake School District Defendants also contend that the court failed to address Count 59, AW's battery claim.  As the court noted in its order, however, it "is the court's understanding Plaintiffs have agreed to the dismissal of Count 59 (battery), except as against Rebecca Robydek." Order at 9 n.2.  To the extent clarification is needed, Count 59 has been dismissed, except as to Robydek.  See Order at 27-28.

The Walled Lake School District Defendants' remaining contentions of error are either based upon new argument or a reiteration of arguments previously considered and rejected by the court.  Therefore, these Defendants have failed to demonstrate a "palpable defect" supporting reconsideration.

### V.     Plaintiffs' Motion for Reconsideration

Plaintiffs also seek reconsideration on several issues involving the dismissal of some of their claims against the individual prosecutors (Defendants Dean and Carley) and Oakland County. Plaintiffs contend that the court erred in finding their § 1983 claims against Dean and Carley to be barred by absolute immunity. As the court noted: "Whether Dean and Carley are entitled to absolute immunity here turns on whether the interviews of IW and AW should be characterized as the evaluation and marshaling of evidence, and the preparation of witness testimony, or whether Dean and Carley instead engaged in investigative or 'police work.' The court finds that Dean and Carley's interviews of IW and AW fit squarely within their roles as advocates." Order at 10.

Plaintiffs suggests that a question of fact exists whether the prosecutors' questioning of IW was done in their role as advocates, given that they were not imminently preparing for trial and did not plan on calling IW as a witness. The court finds, however, that Plaintiffs urge an unduly cramped view of the advocate's role. It would be a very poor prosecutor indeed who did not explore if a potential witness had more to say than what was included in a statement to police. Simply because additional information may be elicited at a witness interview by a prosecutor does not transform the interview into "police work" akin to a "detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested," for example. See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). The court finds that Plaintiffs have not demonstrated a "palpable defect" in its grant of absolute immunity to the individual prosecutors with respect to Plaintiffs' § 1983 claims.

Plaintiffs also contend that the court should not have dismissed their Fourth Amendment

claim against Oakland County, making the point that even if the individual prosecutors are immune, Oakland County could nonetheless be liable on a failure to train theory. Plaintiffs have not, however, demonstrated a "palpable defect" in the court's determination that they have not met the "deliberate indifference" standard for imposing municipal liability under § 1983. See City of Canton v. Harris, 489 U.S. 378, 388 (1989). To show deliberate indifference based upon a failure to train, Plaintiffs must show: (1) that the prosecutors' training was inadequate to prepare them for the tasks that prosecutors must perform; (2) that the inadequacy persisted due to the County's deliberate indifference; and (3) that the inadequacy is closely related or actually caused the plaintiff's injury. Pinton v. County of Summit, 540 F.3d 459, 464 (6th Cir. 2008). Plaintiffs may demonstrate the second element – deliberate indifference – two ways. Plaintiff may "show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. In the alternative, 'a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability.'" Id. (citations omitted).

Plaintiffs argue that Oakland County has failed to train its prosecutors to handle recurring situations, such as interviewing child witnesses.[1] "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011). Lacking

---

[1] The prosecutors did receive some training (see Docket No. 293-3 at 7), although the specific topics are not detailed in the record.

evidence of a pattern of constitutional violations, Plaintiffs attempt to proceed on a "single-incident" liability theory. See id. at 1361. Under similar circumstances, however, the Supreme Court rejected municipal liability for a prosecutor's single Brady violation. "Failure to train prosecutors in their Brady obligations does not fall within the narrow range of Canton's hypothesized single-incident liability." Id. The Court explained that attorneys receive training, beginning in law school, that differentiates them from the average municipal employee.

> In light of this regime of legal training and professional responsibility, recurring constitutional violations are not the "obvious consequence" of failing to provide prosecutors with formal in-house training about how to obey the law. Prosecutors are not only equipped but are also ethically bound to know what Brady entails and to perform legal research when they are uncertain. A district attorney is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe that those tools are insufficient to prevent future constitutional violations in "the usual and recurring situations with which [the prosecutors] must deal." A licensed attorney making legal judgments, in his capacity as a prosecutor, about Brady material simply does not present the same "highly predictable" constitutional danger as Canton's untrained officer.

Connick, 113 S.Ct. at 1363, 1364 ("The possibility of single-incident liability that the Court left open in Canton is not this case.") (citations omitted).

The reasoning in Connick forecloses a showing of municipal liability here. Plaintiffs have not demonstrated a pattern of constitutional violations or have otherwise shown that Oakland County acted with deliberate indifference. Accordingly, Plaintiffs have not demonstrated a "palpable defect" with respect to the court's dismissal of their § 1983 claim against Oakland County.

Plaintiffs also seek reconsideration of the court's dismissal of their state tort claims

-10-

against the individual prosecutors. In this regard, Plaintiffs present arguments already ruled upon by the court, expressly or by reasonable implication. Plaintiffs have not demonstrated a palpable defect warranting reconsideration of these claims.

## ORDER

IT IS HEREBY ORDERED that Plaintiffs' motion for reconsideration [docket no. 289] is DENIED.

IT IS FURTHER ORDERED that the DHS Defendants' motion for reconsideration [docket no. 290], the Oakland County Defendants' motion for reconsideration [docket no. 291], and the Walled Lake Schools Defendants' motion for reconsideration [docket no. 292] are GRANTED IN PART and DENIED IN PART, consistent with this opinion and order.


                                                  s/John Corbett O'Meara
                                                  United States District Judge

Date: March 27, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, March 27, 2012, using the ECF system.

                                                  s/William Barkholz
                                                  Case Manager