UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THAL FLAM WENDROW, *et al.,*

      Plaintiffs,

                              Case No. 08-14324

v.

                              Hon. John Corbett O'Meara

MICHIGAN DEPARTMENT OF
HUMAN SERVICES, *et al.*,

      Defendants.

_____/


**OPINION AND ORDER DENYING
IN PART AND GRANTING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      Before the court is Defendants Oakland County, Eric Overall, David

Gorcyca, Deborah Carley, and Andrea Dean's ("Defendants") motion for summary

judgment, filed January 15, 2014, which has been fully briefed. The court heard

oral argument on March 6, 2014, and took the matter under advisement.

**BACKGROUND FACTS**

      On March 30, 2011, the court granted in part and denied in part Defendants'

motion for summary judgment. <u>See</u> Docket No. 288. The court also denied

motions for reconsideration on March 27, 2012. Docket No. 313. Defendants

appealed based on qualified immunity and Plaintiffs cross-appealed. The Sixth

Circuit affirmed in part and reversed in part.  Wendrow v. Michigan Dept. of Human Servs., 534 Fed. Appx. 516 (6th Cir. 2013).  Relevant here, the Sixth Circuit reversed this court's grant of qualified immunity to prosecutors Andrea Dean and Deborah Carley on Plaintiffs' state tort claims.  On remand, based upon language in the Sixth Circuit's decision, this court permitted Defendants to file a summary judgment motion challenging the merits of the state tort claims.  That motion is now before the court.  Having set forth the factual background of this case in previous orders, the court will not repeat it here.

Plaintiff alleges several state claims against Dean and Carley: defamation, invasion of privacy (false light), invasion of privacy (disclosure of private facts), intentional infliction of emotional distress, malicious prosecution, and abuse of process.  This court determined that qualified immunity barred these claims because Dean and Carley acted in good faith, based upon their belief that facilitated communication ("FC") was reliable.  The Sixth Circuit reversed, finding that "[w]ith respect to the intentional torts that relied upon the use, or misuse, of FC, there is sufficient evidence that Dean and Carley knew or should have known that the procedures that they were using were not within FC protocols for sexual-abuse allegations and that specific safeguards should have been utilized, but were not." Wendrow, 534 Fed. Appx. at 534.

The court further noted that some of the torts – defamation, invasion of privacy – were not based upon the use of FC and, therefore, Dean and Carley's alleged belief in the reliability of FC did not provide a basis for immunity. "Thus, even if we agreed with the district court's determination that the prosecutors relied in good-faith on the FC-communications, which we do not, we would still reverse the district court's dismissal of these non-FC-related torts." Id. at 536.

The Sixth Circuit further stated:

> We note that Dean and Carley argue that the district court's summary judgment order may be affirmed in any case because the claims at issue also fail as a matter of law. The briefing does suggest that some of the claims require close scrutiny. However, because we believe each of these claims requires weighty factual and legal determinations, we leave these determinations to make in the first instance. At this stage, therefore, we reverse the qualified immunity/summary-judgment dismissal of these intentional tort claims, and remand them to the district court for further consideration.

Id. at 536. Based upon this language, the court allowed Defendants to submit a motion for summary judgment on the state tort claims.

## LAW AND ANALYSIS

Defendants make three main arguments in favor of dismissal of Plaintiffs' tort claims: (1) the torts unrelated to FC ("non-FC torts") are barred by qualified immunity; (2) all of the torts are barred by absolute immunity; and (3) each of the

tort claims fails as a matter of law.

## I.    <u>Qualified Immunity</u>

Defendants contend that this court may dismiss the "non-FC torts" –
defamation, invasion of privacy, and intentional infliction of emotional distress –
on qualified immunity grounds.  Plaintiffs argue that the issue of qualified
immunity has been decided by the Sixth Circuit and that this court may not rule to
the contrary.  The court agrees that it does not appear that the Sixth Circuit
intended this court to revisit the issue of qualified immunity, but rather the merits
of the claims.  The Sixth Circuit rejected Defendants' qualified immunity argument
as to all of Plaintiffs' tort claims.  The Sixth Circuit could have affirmed the grant
of qualified immunity as to the "non-FC torts" based upon arguments presented by
Defendant but not relied upon by this court; however, it did not do so.

Further, Plaintiffs' claims of defamation and intentional infliction of
emotional distress rely in part on the use of FC and cannot be cleanly characterized
as "non-FC torts."  <u>See</u> <u>Wendrow</u>, 534 Fed. Appx. at 535 (reversing grant of
qualified immunity as to "FC torts," including intentional infliction of emotional
distress); Pls.' Br. at 16 (defamation claim based partly on statements made in
reliance on AW's FC output, such as that Tali Wendrow allowed the abuse of her
child).

-4-

As for Plaintiffs' invasion of privacy claims, Defendants did not address the specific basis for Plaintiffs' claims in the first instance. <u>Compare</u> Docket No. 202 at 27-28 <u>with</u> Docket No. 353 at 9-10. Under the circumstances, it would be unfair to Plaintiffs to allow Defendants a second bite at the qualified immunity apple at this stage of the proceedings. <u>See</u> <u>Kennedy v. City of Cleveland</u>, 797 F. 2d 297, 305 (6th Cir. 1986) ("Where, as here, no new facts or previously unavailable legal arguments were offered and no good cause has been shown to excuse the inordinate delay, it was not an abuse of discretion in our judgment for the trial judge to have denied the motions [for qualified immunity].").  Defendants are not precluded, of course, from raising qualified immunity as a defense at trial. <u>Id.</u> at 305.  Accordingly, the court will deny Defendants' motion for qualified immunity without prejudice.

## II.   <u>Absolute Immunity</u>

Defendants also seek absolute prosecutorial immunity under the common law of Michigan, which parallels prosecutorial immunity under federal law. Plaintiffs contend that common law immunity was abrogated by the enactment of Michigan's governmental immunity statute in 1986.  The Sixth Circuit noted in a footnote: "In reversing, we do not express an opinion as to the reach of common-law absolute immunity to these state-law claims because Dean and Carley *did not*

*present an absolute immunity argument.* However, we do note that it appears to be an open question as to whether Michigan's 1986 governmental-immunity statute eliminated the common-law absolute immunity that Michigan previously afforded to lower-level prosecutors for their quasi-judicial actions." <u>Wendrow</u>, 534 Fed. Appx. at 534 n.2 (emphasis added).

Defendants never raised the absolute immunity argument before this court or the Sixth Circuit; Plaintiffs contend that the issue has been waived. The court agrees that, for the purposes of summary judgment, the absolute immunity issue has been waived. Defendants may raise the issue at trial. <u>See</u> <u>Kennedy</u>, 797 F.2d at 306. Accordingly, the court will deny Defendants' motion for absolute immunity without prejudice.

## III.   **Merits of State Claims**

Defendants also contend that Plaintiffs' state tort claims fail on the merits, an issue that was raised in Defendants' original summary judgment motion. Having granted qualified immunity, the court did not reach the merits of the claims.

### A.   **Defamation**

"A communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing

-6-

with that individual." <u>Ireland v. Edwards</u>, 230 Mich. App. 607, 614 (1998).  A

plaintiff may establish a defamation claim by showing: "(1) a false and defamatory

statement concerning the plaintiff, (2) an unprivileged publication to a third party,

(3) fault amounting to at least negligence on the part of the publisher, and (4) either

actionability of the statement irrespective of special harm (defamation per se) or

the existence of special harm caused by the publication (defamation per quod)." <u>Id.</u>

 

     Plaintiffs' defamation claim is based upon various statements Dean and

Carley made to the press, such as Dean's statement that "It's amazing how the

parents are very big proponents of this method of communication [FC], but as soon

as the child discloses sexual abuse, now the parents are arguing that this is not a

proper means of communication."  Docket No. 232-6.  "Mom basically looked the

other way and failed to protect her." <u>Id.</u>  "Dean said that her mother threatened her

not to tell anyone what happened, and the exam never took place.  After the teen

was removed from the home, an exam was conducted that revealed tears consistent

with sexual abuse." <u>Id.</u>  "Dean said that the teen's brother has said he observed

some of the abuse." <u>Id.</u>

     After the abuse case was dropped, Carley stated to the press that "(The teen)

said several times that she was scared.  Unfortunately, without her testimony, we

didn't have anything to tell us what happened.  Initially, she was cooperative, but that changed." Id.  In another article, Carley stated that the only reason the case was dismissed was because AW "refused to testify." Id.

Defendants contend that many of Dean's statements were based upon AW's CARE House interview and the police reports and reflected her honest belief. Defendants also contend that Plaintiffs are required to how that the statements were made maliciously.  Contrary to Defendants' argument, there is no "honest belief" privilege under the circumstances presented here.  See McCallister v. Detroit Free Press, 76 Mich. 338 (1889).  Defendants rely upon McCallister, which holds that an honestly believed statement may be privileged if "made to a body or officer having power to redress a grievance complained of, or having cognizance of the subject-matter of the communication, to some intent or purpose." Id. at 356-57. This is not the case here, where Dean and Carley made statements to the press.  See Bowerman v. Detroit Free Press, 287 Mich. 443, 446 (1939) ("The fact that the inaccuracy contained in the publication is the result of an honest mistake may possibly be shown by the defendant in mitigation of damages, but the honesty of the mistake does not justify the defamation.").

Moreover, Plaintiffs need not show malice as an element of their defamation claim, because they are not public figures or public officials.  See, e.g., Ireland,

230 Mich. App. at 637 (plaintiff was limited-purpose public figure); <u>Faxon v.</u>
<u>Michigan Republican State Central Comm.</u>, 244 Mich. App. 468, 476 (2001)
("[W]hether the actual malice standard is pertinent in a given case depends on
whether the plaintiff is a public official or public figure.").

For these reasons, Defendants have not met their burden of demonstrating
that they are entitled to judgment as a matter of law on Plaintiffs' defamation
claim.

### B.    <u>Intentional Infliction of Emotional Distress</u>

Defendants have also failed to meet their burden regarding Plaintiffs'
intentional infliction of emotional distress claim, arguing simply that their conduct
did not rise to the level of "outrageous."  In light of all the facts, the court finds
that Plaintiffs have raised a question of fact regarding this claim.  <u>See</u> Pls.' Br. at
20.  <u>Lewis v. LeGrow</u>, 258 Mich. App. 175, 197 (2003) ("Where reasonable minds
may differ, whether a defendant's conduct is so extreme and outrageous so as to
impose liability is a question for the jury.").

### C.    <u>Invasion of Privacy – Disclosure of Private Facts</u>

In order to establish a claim for invasion of privacy due to the disclosure of
private facts, a plaintiff must establish "that the disclosed information is highly
offensive to a reasonable person and that the information is of no legitimate

concern to the public.  The information published must concern the individual's private life and must not have been a matter of public record or otherwise exposed to the public eye." <u>Winstead v. Sweeney</u>, 205 Mich. App. 664, 668 (1994).

Plaintiffs' claim is based upon two disclosures: Dean allegedly disclosed the press that IW had Asperger's Syndrome; and Carley disclosed that AW "started having problems" and was "having trouble in school."  Docket No. 232-6, Exs. 24A, 24D, 24L.  Defendants contend that these statements "concerned alleged crimes which are matters of public concern." Defs.' Br. at 21.  Defendants also argue that these facts were a "matter of public record." <u>Id.</u> at 22.  Defendants do not specify how these facts were a matter of public record or how personal information regarding AW and IW is a matter of public concern.  At a minimum, there is a question of fact regarding these issues.

### D.   <u>Invasion of Privacy – False Light</u>

"False light invasion of privacy requires a communication broadcast to the public in general or publicized to a large number of people which places the injured party in a light which would be highly offensive to a reasonable person. The actor must have had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." <u>Early Detection Center, P.C. v. New York Life Ins. Co.</u>, 157 Mich. App.

-10-

618, 630 (1986).

This claim is based upon Dean's statement that the Wendrows were "very big proponents" of FC, and only determined that "this is not a proper means of communication" when the allegations of abuse arose. Defendants contend that the statement is true because Wendrows were in fact proponents of FC, and came to believe differently after it was shown that AW could not communicate in court. Plaintiffs argue, however, that the Wendrows never condoned the use of FC without appropriate protocols and training, as was done to elicit sexual abuse allegations from AW. "These statements falsely attributed support for the communication technique the authorities were using to elicit abuse allegations, and in doing so made the Wendrow appear guilty of covering up child abuse." Pls'. Br. at 22. Indeed, Dean's statement implies that the Wendrows disingenuously disclaimed support for FC in only order to discredit the abuse allegations against them. Viewing it in the light most favorable to Plaintiffs, the statement is not true and casts the Wendrows in a false light.

### E.    Malicious Prosecution

The elements of a malicious prosecution claim are (1) a prosecution caused or continued by one person against another; (2) termination of the proceeding in favor of the person who was prosecuted; (3) absence of probable cause for

initiating or continuing the proceeding; and (4) initiating or continuing the proceeding with malice or a primary purpose other than that of bringing the offender to justice. <u>Abdul-Mujeeb v. Sears Roebuck & Co.</u>, 154 Mich. App. 249, 254 (1986).

Defendants contend that Dean and Carley did not "initiate" the action against the Wendrows. However, these prosecutors "continued" the criminal prosecution, which is sufficient. <u>See id.</u> Defendants also claim that AW's statements that her father abused her and that her mother knew, but did nothing, provided probable cause. However, it is clear that whether AW's statements were sufficiently reliable to support probable cause is a question of fact. Defendants further argue that they did not act with malice. Nonetheless, Defendants' actions in continuing the prosecution even after it arguably became clear that AW could not reliably communicate through FC raises a question of fact regarding malice. Defendants have not met their burden of demonstrating that they are entitled to judgment as a matter of law on this claim.

### F. <u>Abuse of Process</u>

In order to establish a claim for abuse of process, Plaintiffs must show, "First, the existence of an ulterior purpose, and, second, an act in the use of the process not proper in the regular prosecution of the proceeding." <u>Three Lakes</u>

Assoc. v. Whiting, 75 Mich. App. 564, 572, 255 N.W.2d 686 (1977) (citation omitted).  "Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process."  Id.  The nature of the improper act required to establish such a claim is explained as follows:

> Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.  The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club.  *There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than in the issuance or any formal use of the process itself, which constitutes the tort.*

Id. at 573 (quoting Prosser, Torts (4th ed.), § 121 at 857) (emphasis added).  See also Young v. Motor City Apts. Ltd., 133 Mich. App. 671, 678-80 (1984).

Plaintiffs contend that the "ulterior purpose here is political," in that Defendants were sensitive to press coverage and public criticism of the prosecutor's office's handling of Plaintiffs' case and others.  This falls into the category of "regular and legitimate use of process, though with a bad intention," rather than attempting to use the prosecution to obtain a collateral advantage, "by the use of the process as a threat or club."  In other words, there is no allegation

that the prosecutors were attempting to get the Wendrows to do something or give up something and used the prosecution as a threat to get their way.  See Three Lakes, 75 Mich. App. at 574 (defendants allegedly used lawsuit to coerce plaintiff into ending otherwise proper opposition to condominium project).  See also Docket No. 288 at 39-41 (dismissing Plaintiff's abuse of process claim against the Walled Lake School District defendants).  The court finds that Plaintiffs have not stated a claim for abuse of process as a matter of law.

## ORDER

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is DENIED WITHOUT PREJUDICE with respect to qualified and absolute immunity, DENIED as to the merits of the defamation, intentional infliction of emotional distress, invasion of privacy, and malicious prosecution claims, and GRANTED as to the abuse of process claim.

                                    s/John Corbett O'Meara
                                    United States District Judge

Date:  May 7, 2014


        I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, May 7, 2014, using the ECF system.


                                    s/William Barkholz
                                    Case Manager